## COMMONWEALTH *vs.* GUILFORD WHITE.

Suffolk. March 26, 27.— June 26, 1877. Nov. 27.— Dec. 7, 1877.
LORD & SOULE, JJ., absent.

A thief, who steals goods in another state and sends them into this Commonwealth by an agent, not an accomplice in the theft, may be indicted for larceny here.

On an indictment for receiving stolen bonds, the property of one S., it appeared that the bonds were stolen from S. in another state by some person unknown, and were afterwards brought into this Commonwealth by a person from whom the defendant received them in Boston. The defendant requested the presiding judge to instruct the jury that, in order to convict, " the jury must be satisfied that the defendant received the bonds in this state from the person who actually stole them from the said S." The judge refused this request, and instructed the jury that " it is not necessary that the person who actually committed the theft should bring the bonds into this Commonwealth ; but if any one acting for and in behalf of the thief, or aiding such thief by receiving, having or holding the same after the actual theft, and knowing that they were stolen, brings them into this Commonwealth, and the defendant received the bonds in the county of Suffolk from any such person, knowing that they were stolen, and this is proved beyond a reasonable doubt, the jury must convict." No question was raised as to the unlawful intent of the defendant, and a bill of exceptions, allowed by the judge, stated that "upon other branches of the case instructions were given to which no exceptions were taken." *Held*, that this instruction, by the fair construction of it, presented the case of bonds being brought into this Commonwealth by some person acting for the thief as his agent and not of a person, who, having bought them in another state, brings them here on his own account. *Held, also*, that it was to be presumed that the judge instructed the jury that the words " knowing that they were stolen " imported a guilty knowledge.

On an indictment for receiving " three bonds of the United States, each of the value of ten thousand dollars, of the property " of one S., it appeared that the bonds were, after they were stolen, and before they were received by the defendant, fraudulently altered by erasing the name of S. and inserting the name of C. ; the verdict was " guilty of receiving two bonds." *Held*, that the fraudulent alteration did not take away from them the character of bonds of the United States or deprive S. of his ownership in them.

INDICTMENT in four counts, charging the defendant with receiving three bonds of the United States, knowing them to be stolen.

At the trial in the Superior Court, before *Bacon*, J., the jury returned a verdict of guilty, on the second count, of receiving two of the bonds ; and the defendant alleged exceptions, the material parts of which appear in the opinion.

The case was argued in March, 1877, and a rescript was entered overruling the exceptions. The defendant thereupon

moved for a rehearing, and this motion was argued in Novem-ber, 1877.

*H. W. Paine,* (*T. L. Wakefield & D. C. Linscott* with him,) for the defendant.

*W. C. Loring,* Assistant Attorney General, (*C. R. Train,* Attorney General, with him,) for the Commonwealth.

MORTON, J. The second count of the indictment, upon which alone the defendant was convicted, charges that the defendant at Boston " three bonds of the United States, each of the value of ten thousand dollars ; three pieces of paper, each of the value of ten thousand dollars, of the property, goods and chattels of one Amasa Stone, then lately before within said Commonwealth stolen, taken and carried away by a certain evil disposed person, feloniously did buy, have, receive and aid in the concealment of, he the said White then and there well knowing the said property, goods and chattels to have been feloniously stolen as aforesaid."

It appeared at the trial that the bonds were stolen from Stone in the State of New York by some person unknown, and were afterwards brought into this Commonwealth by one Chapman, from whom the defendant received them in Boston. The defendant requested the court to instruct the jury " that in order to convict under the second and fourth counts, the jury must be satisfied that the defendant received the bonds in this state from the person who actually stole them from said Stone." The court refused this request, and instructed the jury that " it is not necessary that the person who actually committed the theft should bring the bonds into this Commonwealth ; but if any one acting for and in behalf of the thief, or aiding such thief by receiving, having or holding the same after the actual theft, and knowing that they were stolen, brings them into this Commonwealth, and the defendant received the bonds in the county of Suffolk from any such person, knowing that they were stolen, and this is proved beyond a reasonable doubt, the jury must convict."

The parties differ as to the construction of these instructions. The defendant contends that the instructions were intended to present two alternative states of fact, under either of which the defendant might be convicted ; and that under them the jury

might convict, either if the person who brought the bonds into this state was in so doing acting as the agent of the thief, or if such person had bought them or otherwise obtained them of the thief in New York and afterwards brought them into this state upon his own account and acting independently of the thief. But we are unable to adopt this construction. In the instructions the participles "acting" and "aiding" and the verb "brings" are all in the present tense and all refer to the same point of time. The meaning is the same as if the sentence were transposed, and read, that if any person brings the bonds into this state, then acting for and in behalf of the thief, or then aiding such thief by receiving, having or holding the same, the defendant might be convicted if he received the bonds of such person knowing that they were stolen. The idea expressed is that such person is acting for the thief or aiding the thief in bringing them into this state. This is inconsistent with the defendant's construction. If he had bought them previously and brings them here acting solely upon his own account, he could not in any fair sense be said to be aiding the thief.

The instruction was given in response to a special request for a ruling that "the jury must be satisfied that the defendant received the bonds in this state from the person who actually stole them." No instructions were requested as to what the law would be, if the bonds had been brought here by a person, acting for himself, who had bought them in New York, and the bill of exceptions does not show that this question was important or arose at the trial. If this question had been in the mind of the presiding justice, it is difficult to believe that a ruling to the effect that the defendant might be convicted if the bonds were brought here by any one having then no connection with the thief, could have been expressed in the language of the instructions given.

We are of opinion that the two clauses of the instructions were intended to be explanatory of each other, and not intended to present two alternative and exclusive propositions; and that by the fair construction of the instructions, they suppose the case that the bonds are brought into this Commonwealth by some person acting for the thief as his agent, and not that they are brought here by a person who has bought them in New York, and who, in bringing them here, acts on his own account and independently of the thief.

Assuming, for the purposes of the case, that it was necessary for the government to prove, as alleged in the indictment, that the goods received by the defendant were stolen in this Commonwealth, the question is presented whether, under the circumstances stated in the instruction, the original thief is guilty of a larceny in this Commonwealth.

To put the case in the light most favorable to the defendant, the question is whether, if a man, who was never in this state, steals property in another state, and sends it here by the hand of an agent to be sold, he is guilty of larceny of the property here.

It has been held from the earliest times that if a person steal goods in one county and bring them into another, he may be indicted for larceny in either county. His unlawful possession in the second county is deemed to be a continuance of the original taking and asportation. And it has been settled in this Commonwealth, so as not now to be an open question, that if the thief bring into this state property stolen in another state, it is a new taking and asportation in this state, and he may be here indicted for larceny of the property. *Commonwealth* v. *Cullins*, 1 Mass. 116. *Commonwealth* v. *Andrews*, 2 Mass. 14. *Commonwealth* v. *Uprichard*, 3 Gray, 434. *Commonwealth* v. *Holder*, 9 Gray, 7. *Commonwealth* v. *Macloon*, 101 Mass. 1. If, therefore, the thief himself had brought these bonds into this state and disposed of them, he might have been indicted and punished here for larceny.

The case finds that he did not personally come into this state, but sent the stolen bonds here by the hand of an agent. The agent who brought them here, not being a participant or accomplice in the original theft, could not be indicted for larceny, though he knew that they were stolen. The original taking, of which the possession and control of the goods here is a renewal or continuance, was not done by him, and therefore all the elements of the crime could not be proved against him. But it is not uncommon under the criminal law that a man may commit a crime without being personally present. Thus a man who erects a nuisance in a river or stream in one county or state, is liable criminally as well as civilly in every county or state in which it injures the land of another. One who publishes a libel in another state in a newspaper which circulates also in this

Commonwealth, is liable to indictment here. If a man invites an insane person or a child or an innocent agent to commit a larceny in his absence, he is liable to the same extent as if personally present at the commission of the crime ; and this is so, even if he was all the time in another jurisdiction. *Commonwealth* v. *Macloon*, 101 Mass. 1, and cases cited. *People* v. *Adams*, 3 Denio, 190. *The King* v. *Brisac*, 4 East, 164. *Rex* v. *Cooper*, 5 Car. & P. 535. *Regina* v. *Bannen*, 2 Moody, 309. *Regina* v. *Michael*, 2 Moody, 120. *The Queen* v. *Valler*, 1 Cox C. C. 84. *The Queen* v. *Manley*, 1 Cox C. C. 104. *The Queen* v. *Bull*, 1 Cox C. C. 281.

The personal presence of the thief is not always necessary to make him guilty of a larceny. If he does in this state, either personally or by the hand of another, who is not a principal in the larceny, all the acts which constitute the essential elements of the crime, he may be indicted and punished in this state if he can be apprehended within its jurisdiction. It is true that it has been held that when the agent is a guilty actor in the commission of the felony, he is the principal offender, and the procurer is an accessory before the fact ; but when the agent is not guilty of the principal crime, the procurer is regarded as the principal, though absent.

In the case at bar, a person unknown to the jury stole the bonds in New York. He entrusted them to the hands of an agent, not an accomplice in the theft, and sent them into this Commonwealth to be disposed of. While they were here, in the hands of his agent, he had the same control and power over them as if he held them here in his own hands. His mind directed the disposition of them ; he sold them to the defendant. We think the maxim, *qui facit per alium facit per se*, applies, and that he was liable, criminally as well as civilly, for the acts of his agent to the same extent as if done by him in person. The agent is not guilty of a larceny, for the reason we have before stated. But the principal thief, having, through his agent, been in possession and having disposed of the bonds here, has here committed all the essential acts necessary to make the crime of larceny. He has here wrongfully and fraudulently taken and carried away the goods of another, with the felonious intent to convert them to his own use and make them his own property

without the consent of the owner. We are therefore of opinion that the instruction we are considering was correct.

The defendant contends that as the bonds stolen in New York were, after they were stolen, and before they were received by him, fraudulently altered by erasing the name of the payee, "Amasa Stone, Jr., Cleveland, Ohio," and inserting "B. F. Caldwell, New York," the conviction against him cannot stand. The second count charged him with receiving "three bonds of the United States, each of the value of ten thousand dollars." The verdict was "guilty of receiving two bonds."

The fraudulent alteration by the thief or an accomplice or confederate of the bonds did not take away from them the character of bonds of the United States, and did not deprive Stone of his ownership. They still were bonds which, if Stone could regain possession of them, he might recover of the obligors at their full value. The fact that the character of stolen property is changed before it reaches the receiver is not material, if he knows that it was stolen property. *Rex* v. *Cowell*, 2 East P. C. c. 16, § 48. The bonds received, though altered, were the same bonds which were stolen, and were sufficiently and properly described in the indictment as "bonds of the United States."

The defendant now contends that the instructions were erroneous, because under them the jury would be authorized to convict the defendant if he received the stolen bonds innocently and without any unlawful intent. No such question was raised at the trial or is fairly open under the bill of exceptions. The bill purports to recite only the instructions so far as they relate to the subjects of the defendant's special requests, and states that "upon other branches of the case instructions were given to which no exceptions were taken." It is to be presumed that the court correctly instructed the jury upon the elementary principle that the words of the statute, "knowing the same to have been stolen," import a guilty knowledge.

*Exceptions overruled.*