COMMONWEALTH *vs.* MICHAEL J. WELCH.[1]

Bristol.   January 7, 1963. — February 1, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Public Officer. Municipal Corporations,* Officers and agents. *Evidence,* Of receipt of present. *Pleading, Criminal,* Indictment. *Jurisdiction,* Place of crime.

At the trial of an indictment of a member of a municipal light commission, authorized to procure materials, for a violation of G. L. c. 268, § 9, prohibiting him from receiving "directly or indirectly" a present from a supplier of materials, where it appeared that the supplier gave his check to the manager of the municipal lighting plant because he "wanted the . . . [commissioners and the manager] to have a good time" at a convention, that with that check the manager purchased travelers' checks in the name of another commissioner, and that the defendant received a portion of the proceeds of the travelers' checks from the other commissioner, the supplier's check and the application for the travelers' checks were properly admitted in evidence.   [369]

An indictment for violation of G. L. c. 268, § 9, in that the defendant, "on or about" a specified date, being a member of a municipal light commission and authorized to procure materials, did receive for himself a present of a certain sum from a supplier of such materials, "being a portion of" a check in a larger amount received by the manager of the

---

[1] The companion cases of Commonwealth *vs.* Oliver, Commonwealth *vs.* Kelley, and Commonwealth *vs.* O'Donnell were tried together with this one, but are not before us.

municipal lighting plant "on or about" that date, was not invalid as being "vague, uncertain and indefinite as to time and place" or as not setting out the offence "fully, plainly, substantially and formally." [367–368, 369]

On an indictment of a public officer under G. L. c. 268, § 9, for receiving a present from a supplier of materials, the defendant may be found guilty if he accepted the present without knowledge of or inquiry as to its source at the time of receiving it but continued to retain it upon subsequently learning that it was given in violation of the statute. [370]

There was jurisdiction in Massachusetts to prosecute an officer of a Massachusetts municipality under G. L. c. 268, § 9, for receiving a present from a supplier of materials even though the officer received the present outside of Massachusetts. [370–371]

INDICTMENT found and returned on June 18, 1959.

The case was heard in the Superior Court by *Taveira,* J.

*Michael J. Monahan* for the defendant.

*Joseph C. Duggan,* Special Assistant Attorney General, for the Commonwealth.

SPIEGEL, J. An indictment, alleging a violation of G. L. c. 268, § 9,[2] charged that on or about April 21, 1958, the defendant, "being a commissioner and member of the Taunton Municipal Light Commission of said City of Taunton, which owns a municipally operated public utility known as the Taunton Municipal Lighting Plant, and being duly and legally appointed and qualified to perform the duties of such officer and being authorized to procure materials, supplies and other articles by purchase and contract, and to employ services and labor, did receive for himself a present, to wit: Money of the amount and of the value, in all of $150.00 from Arthur J. Sullivan, owner of the A. J. S. Piping Company of Braintree, who furnished such materials and supplies to said Taunton Municipal Lighting

---

[2] "An officer or agent of, or a person employed by, the commonwealth, or by a county, city, town or by any public institution not mentioned in section twelve who, being authorized to procure materials, supplies or other articles either by purchase or contract, or to employ service or labor, receives, directly or indirectly, for himself or for another, a commission, discount, bonus, present or reward from the person who makes such contract, furnishes such materials, supplies or other articles, or from a person who renders service or labor under such contract, and a person who gives or offers such commission, discount, bonus, present or reward, shall be punished by a fine of not less than ten nor more than five hundred dollars or by such fine and imprisonment for not more than one year."

Plant, being a portion of the $1,000.00 check received by Carroll A. Oliver on or about April 21, 1958.'' The defendant, having waived his right to a trial by jury, was found guilty by a judge of the Superior Court. The case is here on appeal under G. L. c. 278, §§ 33A–33G, as amended through St. 1955, c. 352, § 1.

The transcript of evidence reveals the following. Arthur J. Sullivan, owner of the A. J. S. Piping Company, Inc., testified that in 1958 his firm was performing a contract for the installation of piping for the Taunton Municipal Lighting Plant and that during this period he performed other contracts for the plant. He further testified that on or about April 21, 1958, he gave a $1,000 check to Carroll A. Oliver, the manager of the lighting plant because he ''wanted the boys to have a good time, meaning the commissioners'' and Oliver, at a ''power'' convention to be held in New Orleans. Oliver admitted to a State police lieutenant investigating the case that he had received and indorsed the check from Sullivan. Oliver used the check to purchase two ''batches'' of travelers' checks of $500 each, one in his name and the other in the name of John J. O'Donnell, one of the commissioners. Two purchasers' applications for travelers' checks and the $1,000 cancelled check were admitted in evidence. During the investigation of the case O'Donnell admitted that he received $500 of the $1,000 from Oliver in the form of travelers' checks and that, when he received the check, he was aware the money came from Sullivan so that the commissioners could have ''a good time.'' O'Donnell also told the investigating police officer that of the $500 proceeds he received from Oliver, he gave $200 to the defendant at a Providence, Rhode Island, railroad station. The defendant stated to the police lieutenant that O'Donnell gave him $150 in the railroad station at Providence but that he ''did not know until sometime around January 10, 1959, from where the money had come.''

The defendant's first assignment of error asserts that the trial judge did not restrict the testimony of a police officer regarding a conversation held between that officer and a

codefendant, John J. O'Donnell, in so far as the conversation concerned the defendant, who was not present at the time. The transcript shows that the judge did restrict this testimony with the remark: "I am going to permit it [the conversation] insofar as it relates to Mr. O'Donnell's case."

Assignments of error two and three relate to the admission in evidence against the defendant of the purchaser's application for travelers' checks and the $1,000 check from Sullivan to Oliver. As the defendant was charged in the indictment with receiving as a present $150 of the original $1,000 given to Oliver, it was clearly relevant to trace the source of the money to Sullivan's check. Payment of the money was criminal only if it was received "directly or indirectly . . . from the person who makes such contract" within the meaning of G. L. c. 268, § 9. Evidence as to how the money was paid, and by whom it was paid, was properly admitted. The commission of a crime cannot always be proved by relating one incident. The receipt of the check for $1,000 by Oliver, for example, was but one link in a chain of necessarily related events. "The crimes here charged are the sort of offences that ordinarily can be proved only by circumstantial evidence. *Commonwealth* v. *White,* 208 Mass. 202, 204." *Commonwealth* v. *McCarthy,* 281 Mass. 253, 257–258.

The fourth assignment of error is on the grounds that the "indictment was vague, uncertain and indefinite as to time and place and did not set out the offense fully, plainly, substantially and formally." In *Commonwealth* v. *Oliver,* 342 Mass. 82, 85, which arose out of the same transactions, this court ruled that: "The indictments of the commissioners for violation of G. L. c. 268, § 9, in the taking of presents from suppliers are . . . valid." The defendant could have availed himself of further specifications as to the time and place of the offence by the use of a bill of particulars.

Assignments of error five, six, and seven relate to the refusal of the judge to grant various requests for rulings by the defendant. Except for request No. 9, they refer to the sufficiency of the evidence or are repetitive of contentions

already dealt with in this opinion. Enumeration of these requests would serve no useful purpose. In request No. 9 the defendant asked the court to rule "that if the defendant accepted money as charged in the indictment the Commonwealth must prove that he had knowledge of such fact at the time of such gift, and knowledge acquired at a subsequent date would not be the requisite knowledge as required under the allegations as stated in this indictment." Assuming that G. L. c. 268, § 9, requires "knowledge" of the source of payment, it does not follow that the "knowledge" must be contemporaneous with the payment. Although there are no decisions in this jurisdiction on the precise question, the situation in the instant case may be likened to a charge of buying, receiving, and aiding in the concealing of stolen goods. In *Commonwealth* v. *Kronick,* 196 Mass. 286, 288, this court held that "the offence was complete although . . . [the defendant] may have received the property innocently, if he subsequently, with the guilty knowledge that it was stolen property, bought it or aided in its concealment." We hold that a public official who accepts money without inquiry as to the source of the payment, and subsequently learns that the source was such as to constitute a violation of the statute, and yet retains the money, may be found guilty within the scope of G. L. c. 268, § 9, as surely as the official who accepts payment knowingly in the first instance. To rule otherwise is to provide an escape hatch which would violate the intent of the statute. It would permit a public official deliberately to remain ignorant of the source of the payment. Though such an official has the means of inquiry, he would only have to close his eyes to that which may have been visible to him had he cared to look. One should not be permitted blindly to accept money and then, after having absolute knowledge that the payment was a violation of law, continue to retain the money.

In his eighth assignment of error, the defendant contends that since the "receiving took place in Rhode Island" the trial court was without jurisdiction. The defendant was a public official of a municipality in Massachusetts. It was

an offence in violation of a Massachusetts statute and the harm was to the municipality. The physical act of handing over the money was but one step in the commission of the offence. An offender cannot evade guilt under this statute by the simple expedient of stepping across our State border for the sole purpose of accepting the money. See *Commonwealth* v. *White*, 123 Mass. 430, 433, and cases cited.

The ninth and final assignment of error is on the grounds that "the Commonwealth had not made out a prima facie case as to said crime and the weight of the evidence did not warrant a finding of guilty." The transcript of testimony furnishes plentiful proof to the contrary. There was no error.

*Judgment affirmed.*